The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oh, yay, oh, yay, oh, yay. All persons having any manner or form of business before the Honorable, the Judges of the United States Court of Appeals are admonished to give their attention while the Court is now sitting. God save the United States and this Honorable Court. Thank you. Can everybody hear me okay? Great. I want to thank you both for being here under these difficult circumstances. We really appreciate your assistance. I'm sure you've already been told this. We will try to remember to raise our hands when we have questions so you'll know that we are trying to interject. And we will try to make this move as well as we possibly can. And I want to apologize in advance. My lights in here are on a motion sensor. If there comes a time when I stand up and wave my arms wildly, it is not because I have a very important question. It's just because I'm trying to get the lights on. All right, we will hear argument now in number 19-1435. And Appellant, we will hear from you. Mr. Banas, is that right? Yes, Your Honor. Good morning. May it please the Court. My name is Brad Banas and I represent the Appellants in this case. This Court should reverse the lower court's decision because this Court does have jurisdiction over the Appellant's claims for pre-waiting list work authorization. Further, the Appellants have clearly stated a claim for unreasonable delay sufficient to survive a Rule 12 motion. And for those reasons, this Court should reverse the lower court, order the agency to provide an answer and allow them to provide a record and allow us to engage in dispositing under the Administrative Procedure Act. First, the lower court determined that it did not have jurisdiction over the Appellant's claims for pre-waiting list work authorization because it agreed with the agency that the agency has discretion whether or not to implement a statute that provides specific eligibility criteria for a benefit. As noted in the case out of the Eastern District of New York, Rodriguez, there is no support and jurisprudence for this position. An agency cannot simply decide to not implement a statute for eligibility for a benefit simply because it doesn't want to. If Congress wanted to give them that discretion, they could draw the statute in terms so broadly that there would be no justiciable standards for the agency to make a decision and trigger the exception under the Administrative Procedure Act. Mr. Bennis, I appreciate the argument on the discretion, but I'm just trying to get organized with respect to the causes of action. And it actually helps the way you're saying it with respect to pre-waiting list work authorization. My question is, does that category, pre-waiting list work authorization, only apply to Counts 1 and 2, or does it apply to Count 3 as well? From my review of the complaint, it seemed that the same issue would apply to Count 3 as it would to Count 1 and 2, but I may be missing something there. Can you explain that, please? Yes, Your Honor. I do believe it would apply to Counts 1, 2, and 3. The Administrative Procedure Act 5 U.S.C. 706 allows a court to compel an agency when it does one of two things. It unreasonably delays agency action or it unlawfully withholds agency action. And so the mandamus claim and the unlawfully withholding claim kind of merge. And you see that in the Rodriguez decision out of Brooklyn, Your Honor. The court noted that it would be satisfactory to order under either and essentially apply the same standards. Can I ask you just a quick follow-up? So, right, there's unlawfully withholding and there's unreasonably delaying, and those have to be sort of in the alternative for you, right? It has to be one or the other? I mean, an agency couldn't be doing both at the same time, could it? It's unclear at this point, Your Honor, because we are at the Rule 12 stage. I think at this point they are alternative. But I think if we win on one, we win on both. Simply because, and again, I'm only talking about the pre-waiting list work authorization claim. The agency's defense is we don't do this. And so if my clients are entitled to a decision on their applications for pre-waiting list work authorization, I do believe the agency has both unlawfully withheld a decision as well as unreasonably delayed it because they would be pending for the same amount of time as their waiting list request, which is in between three and five years. But, again, I would – these causes of action, especially for the pre-waiting list work authorization, may be redundant, although they do seek, I think, analytically to remedy different harms. And, again, I would urge the court to look at the analysis in Rodriguez, where the court basically identifies the questions I think that Judge Quattlebaum and you, Judge Harris, are bringing up and notes that they essentially merge in this case. Yes, Your Honor. Counsel, with 706, and we're talking about the failure to act, and you've got two different pieces of it, but Norton tells us that it's the failure to act with respect to a discrete action that is required to be taken. And maybe it's the same question that they're asking, but what is the discrete action here? And then can you explain where I look to see that that discrete action is itself required under Norton? Yes, Your Honor. The discrete action is then to make a decision on the pre-waiting list work authorization request. We've alleged – Wait, wait, wait. Let me back up and make sure I'm specific. When you say the request, give me more specific. Do you mean your specific plaintiff, or do you mean requests in general? The appellants each requested work authorization on the face of their e-status applications. We allege that is seeking work authorization under 8 U.S.C. 1184 P6. And under the Administrative Procedure Act, when an application is presented to the agency, they must act within a reasonable amount of time. Okay, so the first piece, the discrete action, you say are the applications in this particular case. And so tell me the second part again. What is it that they're required to do? They're required to make a decision on the work authorization request. And I think that obligation comes from two different places. First, it comes from the APA, 5 U.S.C. 555B, that requires any matter presented to an agency to be decided within a reasonable amount of time. And secondly, for people who applied prior to January of 2017, the agency had its own implementing regulation that said any work author... But the pre-17, you agree the pre-17 does not apply to these plaintiffs? No, Your Honor. It does. And why is that? They applied for work authorization in 2016. All of the applicants have 2016 dates or earlier. And so the moment they sent in their work authorization request on the face of their use status application, a regulation was in place that required a decision within 90 days. And if they didn't make a decision within 90 days, the penalty was they had interim work authorization for 240 days. After January of 2017, that regulation went away. However, for 2016 plaintiffs, that's another indication that the agency itself imposed this obligation for any work authorization request. I would also note that this obligation comes from legislative history, Your Honor, if you just take a 50,000 foot view of how Congress has manipulated this program. Can I ask a follow-up to that and then you can go back to the legislative history? If the Secretary, and I get this is a hypothetical, right, but if the Secretary had said at some point during this, in the exercise of my discretion, because I believe it best for the country, I am not allowing the approval of pre-waiting list work authorizations. Would that be reviewable in your view? Would that have been enough in your mind to render this unreviewable? And if not, why not? So I think it's two different issues. There's the question of whether they have discretion to implement this or not, and then they have discretion whether to actually grant them or not. We do not dispute that the agency may find a reason in a particular case to say, yes, you have a pending, bona fide. I understand. I want to explain it, but answer the hypothetical first and then go into it. My question is, if they categorically said, I'm the Secretary, in the exercise of my discretion, I refuse to grant any pre-waiting list authorizations, would that be reviewable? No, Your Honor. Describe that as a decision on the merits of the application, not a decision to implement. That statement would imply they do not have discretion to refuse to implement the statute, but they are exercising their discretion to say no and saying there's no such thing as a – well, it might be pending and bona fide, but we're going to exercise our discretion under the May grant provision to establish a blanket rule. And so in your view, that would be unreviewable? I think we'd have a much harder case in that situation, Your Honor. Judge Urchinson, I don't want to cut you off. No, no, no. Go ahead. Well, if that's what happened – I'm also really interested in this question. And if the Secretary had said, look, I'm establishing a general policy of denying all of these applications, would it be reviewable under sort of regular arbitrary and capricious review? Like, would there need to be an explanation or not? Well, I believe you have to have reasoned decision making no matter what, and that if a decision did not have reasoned decision making, then the agency couldn't argue that it even exercised its discretion. There wouldn't be sufficient decision or record for judicial review. I think that would be problematic. However, if we – I will say, if they made decisions on a pre-waiting this work authorization and they denied it, I would say that that would – if denied it based on discretion, I don't think that would be reviewable under the Administrative Procedure Act. All right. So then tell me, if they say nothing – right? So in this instance, the Secretary didn't say anything, but now tells us that that's effectively what they've done. We – in our discretion, we are not implementing this. Why should we assume – you want us to assume that the Secretary believes it doesn't have the authority as opposed to just chooses not to exercise it. And so I'm having a little trouble understanding why, in the face of silence from the Secretary, we should assume the worst as opposed to assume what seems to be accurate, that the Secretary in her discretion has decided not to grant pre-waiting list authorizations. The appellants are entitled to a – to action. There has been no action. That's all we're asking for in this case, Your Honor. I think that's different. There's a very big difference between a delay cause of action and a denial cause of action. If the agency blanket denied all of these applications, I think we'd have a very difficult time under – and based on discretion, we'd have a very difficult time under 701A1 via 1252A2B2. But the agency's simply done nothing, and the burden is on the agency to demonstrate this is what they've done. They can't simply receive an application and do nothing with it. That's the whole point of 555B, back in the Administrative Procedure Act, the only rules that cover all of these agencies. So if I file an application with the IRS for payment of $1 million and they don't respond, as frankly they probably shouldn't, do I have a claim against the IRS for failing to take action on my request for $1 million? I think you have a cause of action for unreasonable delay, regardless of the merits or potential merits of the final agency action. So even if it is wholly baseless, your view is that you have a claim that the IRS must take action because they're required to take action on any request? Your Honor, I think if they accept the request, because all of these – and again, maybe this is the difference between the IRS – Meaning they open the piece of mail, accept the request as just opening my IRS request? Your Honor, all of these agencies have the ability to simply reject something that's improperly filed and baseless. And CIS is no different. Right. That's why the language pending in bona fide is so important here. If the agency simply rejects a used status application with a work authorization request because it didn't have the signatures, or there's blatant fraud on the face of it, or they just reject it for sending to the wrong service center, that's agency action. But if they accept it and do nothing with it, then the burden is on them. Well, I mean, how much of your answer turns on the existence of this statute? I mean, I'm trying to come up with a hypothetical to go along with Judge Richardson's hypothetical. So if Congress passed a law saying, you know, in light of this pandemic and the unemployment, the IRS may consider early claims for refunds, and then someone sent in an early claim for a refund, and then the IRS said literally nothing, not I'm denying it, not I'm granting it, not I'm issuing a policy statement about how we plan to use this discretion, just dead silence. Then would there be a cause? Because that seems like more like what we have here. I think you'd have a cause of action for an unreasonable delay. And depending on the specific circumstances of that request and viewing it through the track factors, the agency may or may not be able to justify the delay. It may be reasonable, it may not. That's a case-by-case analysis. And the agency simply refuses to engage in that type of analysis in the used status world. And I see I have 15 seconds left, so I'll just try to pivot to our other primary cause of action here that all of these considerations we're discussing really go to an unreasonable delay case. And the waiting list decision here, we have easily stated a claim under Rule 12. And I see my time is up. Thank you. Ms. Warlick, we'll hear from you. Thank you. Can you hear me? Okay, thank you. May I please report? I hate to do this, but I'm going to forget if I don't ask now. Okay. When I look at the 214.14, I think it's D2, you know these numbers better than I do. Do I read that as saying, and if not there, elsewhere, that the agency will not, as a blanket matter, will not grant pre-waiting list work authorizations? Well, Your Honor, pre-waiting list work authorization is something that the agency did not specifically begin to do because they had just implemented this waiting list and they felt that it basically solved the same purpose. Not pre-waiting list, but waiting list. Let me ask the question a different way. Yes, sir. If I wanted to see in the CFR or elsewhere a statement by negative implication or otherwise that the agency would not grant pre-waiting list work authorizations, is there anywhere for me to look? I regret that I don't know that code regulation. There's several under the 214. So, and there's just, as you are probably aware by looking at these briefs, that this is very technical and all the different regulations. It's totally fine. Just say I don't know. It's not a game of gotcha. That's fine. Thank you. I don't know that regulation, if that would have done it. Yes, sir. But to follow up on that question, is it your position that there is something in the regulation that by negative implication says we're not going to grant pre-waiting list work authorizations, or is that something that has been done silently and is articulated now in response to requests like those before us? I believe it's a silence in terms of a direct response to that. Congress, the district court here correctly determined that Congress left this authority to the agency in its discretion about whether, you know, whether and how it would grant, if it so chose, pre-waiting list authorization or, excuse me, pre-adjudication essentially. The statute is very simple and short, and it just simply says in this amendment that the government may grant work authorization to any salient who has a pending bona fide application. Yes, ma'am? Yes, Your Honor. So on your reading of the statute, does it do anything at all, or is it purely superfluous? Because as I read the statutory scheme, even before this amendment, before P6 was passed, the agency certainly had the authority to grant pre-wait list authorizations. I mean, the whole wait list regime is a matter of regulation, not statute. So in your view, this statute does literally nothing. It just tells the agency. Well, not exactly. Well, what does it do? Well, I think it might be important to consider the timeline a little bit about this. Well, can you just tell me what you think the statute does? I believe it shows Congress wanted to give a statutory authority to the agency. But it already had statutory authority. Do you think something in the statute before P6 was added would have prevented the agency from granting pre-wait list authorization? I didn't see anything in the statute that would have done that. Well, I think that it certainly gave the agency the authority to institute the regulations, which it did. Is it your position that before subsection P6 was enacted, the agency could not have reviewed these applications for work authorization until someone was on a waiting list? That is nowhere mentioned in the statute. No, I don't know for sure that that would have been the case. Okay. All right. So the agency already had the discretion to do this. So what does the statute do? I think your answer is the statute does nothing, but you should probably just, you know, own up to that. Well, I don't believe there's, I mean, the statute certainly says what it says. And I don't believe that we get to congressional intent without reviewing the language of the statute itself. I know. I won't ask again, I promise. But it would be helpful to me if you could explain what you think this statute does, what impact it has. Is it like Congress just wrote a letter, like sense of Congress, hey, agency, here's something you might think about? Well, I think that they gave the authority specifically to the agency to do this. I think that it was certainly a gap filler in case the regulations changed. I think it was clear that Congress wanted to make sure that the agency could do this. But this amendment was added right around the same time waiting list regulations were put in place. And in the congressional world, yes, Your Honor? Can I ask a preparatory question to that? Was there specific authority for the agency to grant waiting list work authorization prior to P6? When I look at the Federal Register in adopting the waiting list work authorization, they rely on the agency's otherwise undefined inherent authority. They don't point to any statutory authority for doing so, or specific statutory authority. Is that accurate? Do you know whether the waiting list authorization had specific statutory authority or whether it was merely based on assertion of inherent authority? It was the latter, Your Honor. It was assertion that essentially the agency had the authority to institute regulations, and it did so in an effort to mitigate against the foreseeable future of a low cap on U visas, resulting in quite a bit of overage, over 10,000. Now, that was in 2007 when the agency instituted this regulation and said we will create the waiting list, this sort of mechanism that, by virtue of the waiting list work, the U visa application is still pending. But you receive, when you're placed on the waiting list, you receive deferred action. And the deferred action is something that's available in other areas of immigration. But you receive deferred action, and by virtue of the deferred action, you can receive employment authorization, or at least request it. And the point is that employment authorization as part of the waiting list was based on the agency's inherent authority, and P-6 provides specific authority for doing that very thing. Correct. But it certainly put that in place that there was a statutory authority specific to do so. But again, and I'll turn to the case out of Georgia. And you would agree that the P-6 authority covers, or at least would permit, work authorization pre- and post-waiting list? If the agency chose to do that, it would. Right, the statute permits it. Permits it, certainly. And, of course, yes, Your Honor. So I'd like to ask you about the jurisdictional question. And I don't know if you have an avenue that you think is your primary avenue that you believe deprives the courts of jurisdiction to review this issue. It seems to me there's several that are mentioned in the briefs. There's the 706 issue. There's the 701 issue. There's the 1252 issue. Is there one that you believe is your strongest or primary argument for the absence of jurisdiction? Well, I would say that actually both the APA statute that you mentioned and the one under the INA 1252A2B2 are, in this case, would be redundant. But typically it would be under the APA that the APA exclusion of discretionary adjudications and implementations would be excluded from the judicial review. But plaintiffs here also advanced a mandamus claim, and all of that would be precluded by 1252. So I think 1252 is a broader limitation. But as to APA review specifically, that limitation, I think it's very clear that Congress did not want courts to have authority to adjudicate, excuse me, to review issues that they specifically devoted to or committed to agency authority and agency discretion. And now I will point out that there's a case out of Georgia that specifically says that the statute clearly and unambiguously uses the word may. That's it. The secretary may grant work authorizations. Thus, it's clear the secretary could grant plaintiff a work authorization if his application is bona fide. But there's nothing in the language to suggest that he must. Nothing specific, unequivocal, no specific unequivocal command that he do so. But if he chose to enact specific separate regulations that would address something, a third layer of review, which I honestly fear would just simply slow down everything even further, then we have, of course the agency could do that. That is exactly what discretion is. Yes, Your Honor? I think probably everyone agrees that a decision on any particular applicant is discretionary. I think here our question is whether the decision not to consider pre-waiting list petitions at all. That's the issue. On that point, our Casa de Maryland case talks about programmatic decisions and whether they are reviewable for arbitrariness and capriciousness. What's your position as to why that case, I guess it would be your position, that does not apply to us here? Can you explain why? Well, the agency here, it's not that they're precluding anyone from getting pre-U visa work authorization. That's the difference here. In this case, this very short, brief statutory language doesn't mandate anything different than what the agency is actually already doing in order to mitigate against delays. It may be, but if the reason the agency isn't addressing pre-waiting list authorizations is because it's decided not to categorically or programmatically, why is that not reviewable under Casa de Maryland? Well, I mean, I don't believe that the agency has articulated any sort, like we've discussed before, a reviewable sort of decision about that. That they've essentially, yes, ma'am. But isn't that the problem? I mean, usually when an agency makes a broad, programmatic, discretionary decision, they explain it so that we can review it to see whether it's arbitrary and capricious. I feel like the answer to why shouldn't we review it for arbitrary and capricious can't be because the agency made that impossible by not explaining itself. My concern about this case is that I am reading in briefs the reason the agency has done what it's done, but we've held a number of times that we can't go based on litigation documents and briefs. There's supposed to be some kind of a policy statement or a guidance statement by the agency, and an explanation for the agency's decision. Even assuming this is discretionary, the way in which the agency exercised its discretion is explained to us, and we don't have that here, and I'm just finding that to be a frustrating thing about this case. Well, I understand, Your Honor, but in those cases where the programmatic decision-making is reviewed, it's typically when Congress has made it clear that the agency has to do something. And here, they didn't make that clear. They said you can do this if you want to. In Maryland, it was an enforcement decision, and the law on enforcement decisions is that those are the most discretionary things in the world. You never have to enforce the law against everyone. And even there, we said, look, this is a programmatic, it's not a case-by-case thing. It's a programmatic, generally applicable policy, so we can review that for arbitrary and capricious. Well, Your Honor, I would like to reassure the Court that, as the judge in this district determined, that even if you were to decide that there is jurisdiction to review this under what you're discussing, you ultimately end up in the same place. But before you go there, I mean, the point of those cases, as CASA recognized, was those are cases where there's not a jurisdictional bar on reviewing the reasons, right? The point here is that if it's discretionary, right, 1252 prohibits reviewing reasons. So whether they give reasons or don't give reasons simply doesn't matter, right? In CASA, the Court held that 1252 wasn't a bar, and so it then gets to the question of programmatic. But the threshold issue that you've got, correct me here, is that you've got to first ask whether it's discretionary. And if it's discretionary, it matters not whether they give reasons or not. That's the 1252 bar. Isn't that right? Yes, that's exactly right. And this Court in Roland already decided that threshold legal determinations prior to the exercise of discretion is outside of the Court's jurisdiction. And Roland speaks exactly to this about these legal determinations before discretionary, the weighing of the discretion. Wait, wait, what? I'm sorry. Say that. You think, what is the threshold legal issue that's here? I mean, where do I see any threshold legal determination being made by the agency at all? I mean, the challenge that the plaintiffs have advanced, this legal challenge. They're trying to argue that they're asserting a legal challenge to the agency's discretionary authority. And so even if you were to view it in that lens, this is still outside the agency, the Court's jurisdiction, because it is ultimately discretionary. And here, the language is... I'm sorry, sorry, sorry. I am so genuinely confused by this. I apologize if I've made it worse. No, no, no, no, no. I find this piece very difficult, and both lawyers are being very helpful to me. Dang it. Oh, I'm sorry. No, no, no. So is the rule... It's just a fundamental ad law question I'm having trouble with. The rule can't be, right, that every time an agency exercises discretion, that's non-reviewable. Because all we do when we do arbitrary and capricious review is review exercises of agency discretion. That's what it is. The agency has exercised its discretion, and now we see whether it has explained its decision. So what is it about this exercise of discretion that makes it non-reviewable, as opposed to the kind of exercise of discretion that we customarily review under the arbitrary and capricious standard? Do you see what I'm saying? I understand. Well, 1252, for example, is very clear that when you're discussing a statute that will ultimately get into the weighing of the factors that would weigh in favor or against a positive exercise of discretion, that is with outside of the court's jurisdiction, even if the natural thought would be, oh, we're a court that's reviewing this decision. It was discretionary, so we review it for abuse of discretion. That would be the natural reaction, of course. But 1252 and the APA both said under certain, and especially 1252 applying here, they've said that only constitutional or legal challenges and raised in a removal proceedings, essentially, that is the only time you can review these. And essentially, it is a great deal of discretion that's granted to the agency, but that is exactly what it is, that the agency has this authority because they're the ones that are trusted to be sort of the experts in the field. They know what they're doing. And if you reach, you know, when the discretion is exercised, the petitioner would have to assert some sort of constitutional challenge to that or legal challenge to even attempt to overcome the bar in 1252A2B2. And I'm sure you're experienced with removal proceedings. And to be honest, that is where I typically practice appellate law. I'm more familiar with that. And in those situations, even if the court were to say this is, this is, seems wrong, this seems unfair, this seems the agency and the agents within it are the ones that are vested with this authority to do the weighing of the discretion. And when a statute clearly says that, and the agency hasn't implemented any sort of specific, separate programmatic plan pursuant to that statute, that's within their authority to do. And it's outside of the court's jurisdiction. But like I said, even if you determine that agency, or excuse me, the district court was wrong on that specific jurisdictional holding, they entered an alternative order. The judge here entered an alternative order that essentially you failed to state a claim either because you ultimately would end up in the same place. If these plaintiffs were denied their petition. So before you get to that, and you may not get to it given your time, can I go back to Judge Quattlebaum's initial question, which is about counts one, two, three, and four? Let's put four aside. Why did the government not seek to dismiss count three for lack of jurisdiction on the same basis that it moved to dismiss counts one and two? Because it too is a pre-weighting list work authorization claim. My reading of cause of action three was the broad, like any sort of employment authorization request. And that could fall under the when you get your U visa, when you get deferred action by virtue of the weighting list, or before that. So I guess I simply felt that when I read it, my natural, I didn't think of it being combined with one and two. But obviously perhaps that was a mistake, but I didn't read it that way. So to the extent that count three, as your colleague seems to represent, relates to pre-weighting list work authorization, it has the same jurisdictional defects as counts one and two. To the extent you read it to address weighting list or U visa grantee work authorization, then it has the same defects as count four. That's your position. That's exactly my position, yes. Yes, Your Honor. If I could, I may save you by the bell and let you talk a little bit about your merits claim. But I think I understand your position that the plaintiff would have to show how those plaintiffs are treated differently than other plaintiffs or else they're just kind of going to the front of the line and that's in violation of the regulatory scheme. Does that mean that if you assume we have jurisdiction, the only way the plaintiffs can get relief is by some broad declaratory relief or injunctive relief or class action type claim? Is that the effect of your position? And I assume from what you said, I can answer and pass my time. But I would simply say that I'm not going to suggest that the right vehicle to challenge the U visa process because it is quite, it's a very important program. And I will say, though, that this isn't a class action. This isn't a broad programmatic challenge. I understand that, but you're saying the method that was utilized here by the plaintiffs doesn't work. Is there a method that you would acknowledge would work if it's a programmatic type decision? Well, I would certainly, I wouldn't think so. But, I mean, if the plaintiffs advanced, if someone advanced a class action, the response would be different. I mean, once again, you'd have to look at all the things that would come before you certify a class and then address how it is. So I think here that the agency, as we've discussed or as you mentioned, there isn't anything different about these plaintiffs from many, many other people, including the people ahead of them in line. And I want to make sure before I stop, before my argument is over, to clarify something about if the court would allow these three or four complaints to proceed. As you are aware, one of the plaintiffs has already received waitlist placement and employment authorization, just as it naturally would if they're eligible, if the person is eligible as a matter of course, in the time. That would create the disparate treatment that the agency does not want to engage in. Now, yes, ma'am. Can I ask you a question? Because I know we're running you over time. I'm begging indulgence from my colleagues. Because this goes to one of my concerns about the merits argument. Is this Solis case, which I assume you're aware of and the government has chosen not to appeal in that case? I think it originally noted an appeal and then withdrew it. And so in this case, you know, it was the exact same set of claims and the district court let it go forward to discovery. And then after discovery, you know, made a decision that the government had not been able to substantiate any of its claims, that it lacked resources, that there wasn't enough time. And also, and this is, you know, going directly relevant to what we're talking about, that there would really be any appreciable impact on other people waiting in line. That in fact, like they could go ahead and process these applications and, you know, they were effectively already processed. It took 15 months to process an application and all the time after that was unnecessary. So it really wouldn't make any difference to anyone else. And so, and the government's not appealing that. And so I'm struggling a little bit with how we could hold in this case that without any discovery, you know, we're confident that the government's assertions on this are right, that there would be an impact on other people in line, that this is a matter of resource constraints and that there just isn't enough time to do this for everyone. Well, I can't speak to the, I didn't litigate Solis. And so I would like to just first say I don't know the strategy exactly behind initially seeking appeal. Of course, I hope you understand that bureaucratic sort of things within the agency, our agency, DOJ, about which cases. I'm not suggesting anything nefarious, simply that the government obviously made a decision. It was going to live with that result. And so I guess I don't, I don't know how I'm supposed to work around it now. Well, the cases, I will say, first of all, as speaking for the other people that were in line ahead of the plaintiffs in Solis, they might have seen a difference. They really might have said, you know, that actually does matter to me. That person just got to go ahead in line because they had the wherewithal to file a lawsuit. And so. Okay. I mean, I think that's a little bit inconsistent with the district court's findings about what the government could substantiate on the record there. But that's okay. I'm speaking more of the matter of principle, Your Honor, that this is about, there is a queue. There are specific exceptions that are publicly disclosed about when the agency, when USCIS might adjudicate or review for waitlist placement earlier than the queue. And, or outside of the natural direction. And when someone, when you've been waiting in line and you don't have the wherewithal to file a lawsuit, and someone who does gets to get their work authorization before you, I can imagine that would be very frustrating. Yes, sir. So just so that I understand, and I may not understand the background of Solis either, but the district court in Solis ordered that these, I don't know whether it was five, but however many people be placed on the waiting list. And it found that that wouldn't necessarily, because the agency could do things differently, it wouldn't necessarily affect everybody in line. But as a practical matter, it did, because those five got on the waiting list and people that didn't file the suit did not get on the waiting list. That seems like the point of the track factor, which is, I think, separate from what the Solis determination of what the agency could do, or could substantiate that they were unable to do, as opposed to what they were actually doing. Isn't that the distinction between those two? I believe that's correct. And the point about the reason I mentioned, I guess I should, before I get ahead of myself, the difference amongst the petitioners for this, unfortunately they have all been waiting for quite a while. I understand that. But the point is that all immigration benefits, and this is just a bottom line sort of point, all immigration benefits are, or none are a matter of right, correct? And so when you say that the agency isn't giving you something that you think you deserve, first of all, there's a presumption here that you're going to be approved. And that's certainly not the case. All of the complaints about delay, a lot of them relate to the assumption that you are going to be granted this and that the agency essentially has no place in this review process. They're going to review this substantively to make sure that everything is exactly the way it should be, that the person is eligible, just to summarize that. And in reviewing these applications, or petitions, if you will, adding, to speak to the subsection P6 point, adding a third layer of review, as well as adjudicating some, or reviewing for waiting list placement for some petitioners instead of others, will simply alter the program. I mean, I believe that we would be, there would be more and more lawsuits about this sort of thing when the agency is moving through these as well as it can with what it's dealing with. And that is, the U visa is a free petition. There's no charge to file it. And even if the agency were to begin to charge, the statute requires some fee waiver language. So the agency is approximately 97% fee-based. They have sought appropriations because actually they're running out of even more money. But with that in mind, I will, yes, Your Honor? I was just going to say, do you want to take just a few seconds to wrap up? Yes, my apologies. I'll simply ask the court to affirm the district court's holding. And thank you for your time. All right. And I think you've got some rebuttal time. Yes, Your Honor, thank you. Just a couple of points. So I did litigate the Solis case. Yes, Your Honor? I want you to talk about the Solis case. But I want to go back to something you said earlier, and it relates to the previous 90-day time requirement. And I have two questions related to that. The first is your position that that applies to these plaintiffs. I mean, I think I understand the logic. It was in place when they applied. It was changed after the fact. Other than that logic, is there any authority that has indicated regulatory or case-wise that that 90-day time period applies still, despite the rescission of that provision? The two cases to address that question directly are Rodriguez and Solis. That's the case law out there. The actual regulations, no, there hasn't been any indication. Okay. And those are two district court cases, correct? That's right. One from Brooklyn, one from District of South Carolina. Okay. And let me just follow up then with one other question. Assume, for the sake of discussion, that the 90-day time period does not apply to your clients. Where, then, is the source of the required prong in Norton? 5 U.S.C. 555B. It requires any application presented to an agency to be decided within a reasonable time. Three years is not reasonable to make a ministerial decision on work authorization that the agency published and says it takes them 12 minutes. And so we looked at the general provision of the APA that stands for, I think, undisputed case law, that the agency doesn't have discretion to not make a decision, doesn't have discretion to refuse to exercise its discretion. And I do want to go to Judge Richardson's. Your first question was, is there a statement in the regulations statute policy guidance about 1184P6? The answer is no. There's been no action. The agency, it got enacted, and it simply stayed absolutely silent on it. To your question, Judge. But 214.14.D2 says when pre-grantees will be granted work authorization, right? When they're on the waiting list, right? It describes that. And I understand that it's not an express statement, but that's the negative implication, is that that is when they're granted, which means they're not granted at other times. Your Honor, it simply can't be because that regulation came a year before 1184P6, and the agency hasn't updated that regulation since 2007. And it's remained in place since P6 was enacted, right? We assume agencies act with knowledge, right? And so, you know, they're now aware of another alternative, and they've continued to rely upon the regulation that existed. I think the proper presumption to apply here is that Congress enacts and legislates on its understanding of what's already available in the regulatory scheme. And again, if you look at the overall legislative and regulatory history, 2000, we see the passage of the U visas program, and we see 1184P3, which is – it says the attorney general shall, during the period the aliens are in lawful temporary resident status under you, provide them work authorization. That's the statutory hook they relied on for the waiting list decision because that can be ambiguous. Then, so that happened in 2007. Wait, wait, I'm sorry. Is that in the – does the regulation itself, does the federal regulation rely upon P3? To be frank, Your Honor, I don't know exactly where in the regulation it says it, but that's the only statutory authority out there. Well, that's sort of the point. I don't think they rely on P3, and the point is they rely on some generic inherent authority to do so, and then there's specific authority provided. And nobody should be surprised that they don't go back and change their regulation when the specific authority supports their inherent authority. I understand that, but if you look at 2008, Congress comes in, and on the floor of the House, they say this is taking too long. We're going to provide work authorization for people who are helping law enforcement, not when there's a meritorious decision, which is what the waiting list decision is, but something before that, when it's pending and bona fide. It sets up different standards. To get onto the waiting list, you have to be 100% approvable, and the only thing that's holding you up is that there's not one of the 10,000 visas available. That is different in every way than something that's pending and bona fide, and I do believe there's a gap between pending and bona fide and meritorious. We can send in an application with all the certifications, with everything, and still get denied, but during that waiting period. But if Congress wanted to do it, I mean Congress is totally entitled to do that, but they know how to require that to happen because they do that with grantees. They say they shall be provided work authorization, and if the statute said the secretary shall provide work authorization to a bona fide applicant pre-waiting list, then I'm totally with you, right? But the problem is they know how to do that, and they didn't. And I see I'm out of time, Your Honor, if I could just comment on that. I think you're hitting the root of the problematic nature of the rule that the agency is pushing for. They want this court to condone the principle that Congress must include mandatory language every time it implements a new benefit for them to have to do anything. Otherwise, we can't come in, having applied for that benefit, and say you're not doing what Congress told you. Congress tells the agency how to do things through bicameralism, presentment, and signature. That goes back to INS v. Chadha. There's nothing else required. If they want to draw the statute in such broad terms that there's no justiciable standards, they can, but they don't have to, and they didn't here. They provided plain language, meaning that the court is defined in several different contexts, pending and bona fide. And the agency is simply claiming discretion to ignore what Congress has told it to do. And again, to Judge Quattlebaum's point of Casa de Maryland, this isn't even enforcement. They don't have a claim of prosecutorial discretion here. This is a pure benefit created by statute to protect and help law enforcement as well as the people who are helping to assist it. And I see I'm out of time. If I could have just 30 seconds to, I think, address Judge Harris's question to the government, would that be okay? If not, I can rest on my briefs. You asked, what's the point of 1184 P6? What's the point? And I do think it's kind of the answer I just gave. This gave the agency the ability to remedy the problem Congress saw. Congress saw the problem as – and again, I think I quote it in the brief. A representative got in and said it's taking a year for these people to get what they need to live and work in the United States. It needs to be 60 days. We need to strive for 60 days. And then they pass this pending and bona fide language, which is not in a vacuum. If we look at T visas, we see something similar, right? At the time they did it, the agency had a regulation requiring work authorization in 90 days. So this is not out of the ordinary some extremely generous benefit. That's what 1184 P6 did. It gave them the ability to provide applicants in the pre-waiting list phase what they needed to live in the United States and to help law enforcement. And again, with work authorization comes a social. With a social comes a driver's license, right? Counsel, if you just want to take a second and wrap up. Yes, Your Honor. For all of these reasons, we do think that this court does have jurisdiction to review the 1184 P6 decision and that this court should follow so least on the merits portion of our argument. Thank you, Your Honor. Counsel, thank you very much. This is the part of the argument where we would like to be able to come down and shake your hands. That's not happening for a while, I don't think. But we really appreciate your help today and wish you well, continued health and safety. And I guess we will take a brief recess while we switch around our video equipment. Thank you very much.
judges: Pamela A. Harris, Julius N. Richardson, A. Marvin Quattlebaum Jr.